Larry DeWayne COOLEY, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Dec. 29, 1971.

Certiorari Denied by Supreme Court March 6, 1972.

H. Wayne Grant, Williams, Grant, Clements & Bowen, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Edward E. Davis, Dist. Atty. Gen., Chattanooga, Stanley J. Lanzo, Asst. Dist. Atty. Gen., Red Bank, Frank M. Groves, Jr., Asst. Dist. Atty. Gen., Lookout Mountain, for defendant in error.

## OPINION

MITCHELL, Judge.

On January 22, 1971 the defendant Larry DeWayne Cooley represented by court-appointed counsel was tried in the Criminal Court of Hamilton County, Tennessee and convicted in two separate cases of uttering and publishing two forged bank checks, one check in the amount of $89.40 and the other for $95.40. The jury fixed the punishment in the two cases at not more than two (2) years in the penitentiary in each case. Honorable Russell C. Hinson, Judge presiding pronounced judgment for not less than one (1) year nor more than two (2) years in the penitentiary in each case, and ordered the sentences to be served consecutively.

The motion for a new trial was heard and overruled, and appeal was prayed and granted.

Upon the trial of the defendant in the two separate cases for passing forged checks, Mrs. Sarah Bakken, office manager of W. T. Grant Company on Brainard Road testified that they cash a great many payroll checks, 150 a week. That she saw a young man whom she positively identified as the defendant Cooley, walking to the counter. That she got up and walked to the counter and asked if she could help him. That "without saying a word he presented this check which was written payable to Leroy Meeks, on the Signal Roofing & Supply Company, 509 Dodds Avenue, Chattanooga, Tennessee date 8–27–1970, written on a check writing machine for "the sum of 89 Dols 40 Cts" Signal Roofing Supply Company signed by pen and ink what looks to be Bill H. Marlan and O. J. Carter on Ridgedale Branch of the Hamilton National Bank, Chattanooga, Tennessee.

He also gave her a drivers license # 3722557 with the name MEEKS, LEROY A. 2719 East Main Street, Chattanooga, Tennessee.

That Mrs. Mamie Nicholson, the Credit Manager and Mrs. Virginia Miller, assistant manager were in the office with her at the time. She looked over the check carefully. The amount had not been written in the space for the figures of dollars and cents, she observed the payee's name, "Leroy Meeks", she examined the signature. That she looked at the defendant and he "immediately dropped his head", and she said "just one moment please" and walked to the rear, picked up the phone to call the police, the defendant saw her and said, "Ma'am tell her I'll be back in a minute." She put the phone down and walked back through the office, he was completely out of sight. She walked through a little hallway where she saw he was almost to the front of the store. She called him and asked him to come back. He turned and came back. She watched him until he got almost to her, she turned and went into the office and told the girl it was Leroy Meeks, to call the police. The Assistant Manager began to dial the phone and the defendant ran from the store. Mrs. Mamie Nicholson followed him. Mrs. Bakken

directed the colored janitor who was washing the window to go and help Mrs. Nicholson. She chased the defendant all the way to the edge of East Gate. That she had the defendant under observation for 3 or 4 minutes, under good lights in the building and it was light outside about 6:30 P.M. when she accepted the check, she was the width of the counter from him. She positively identified the defendant as the one who gave her the check. They had been alerted about these checks and gave the matter close attention. She did not give him any money on the check.

Charles William Gaston, Detective Chattanooga Police Department testified he conducted a line-up in which Mrs. Betty Sewell identified the defendant Larry DeWayne Cooley. That he advised the defendant of his rights to a lawyer at the line-up, and that he waived his rights and signed a waiver prior to being placed in the line-up.

Mrs. Betty Jane Sewell testified that in August, 1970 she worked as cashier-checker at By-Ryt Super Market on Dodson Avenue. That on August 28, 1970 she saw the defendant Cooley. That he came in with this check and presented it to Mr. Lamb who was standing right next to her. Mr. Lamb always had to ok all payroll checks. That they had received notice on these Signal Roofing Supply checks. That they had a list on their register of different stolen checks, serial numbers. Mr. Lamb started to go to the telephone and the defendant asked "anything wrong?" Mr. Lamb said, "no." The defendant said, "I'll be vack in a minute, I forgot my cigarettes, I've got to get my cigarettes." He started out the door and she went out the door behind him, and when he saw her behind him he ran. There was a car waiting out there with a driver in it, he got in the car and she got part of the number and gave it to Mr. Lamb, it was a Georgia tag.

"This is a check on the Signal Roofing and Supply Company pay to order of Larry Corbey for $95.40, 8–27–1970 signed Oliver Phifer and C. O. Schoocraft which the defendant gave Mr. Lamb." That a few days later Mr. Gaston called her and asked her to come down and see if she could identify a suspect. That she immediately identified and pointed out the defendant in the line-up. That there was no doubt in her mind that it was the defendant. That at the time the defendant passed the check the lighting was good, and that it was 4:00 or 4:30 P.M. That she had the defendant under observation for a few minutes and she chased him and followed him out of the store. There was no crowd in the store at the time and nobody else coming through her aisle she didn't have a customer at the time.

Oliver Phifer testified he and C. O. Schoocraft are the owners of Signal Roofing and Supply Company, 509 Dodds Avenue Chattanooga, Tennessee. That their place was burglarized on August 27, 1970, that their Hamilton National Bank Checkbook and blank checks and check writing machine were stolen. That he has examined the checks passed in this case and that they are forgeries. That the check which has his name and that of Mr. Schoocraft on it are not their signatures and that the $89.40 check does not have the signatures of Phifer and Schoocraft on it. Both checks are forgeries. He also testified that they had notified all the stores and banks, including By-Ryt Super Market and W. T. Grant Store, that their place had been burglarized and their blank checks and check writing machine had been stolen. He did not know who burglarized their place of business.

## ASSIGNMENTS OF ERROR

The defendant has made the following assignments of error:

1. That the Trial Court erred in "failing to suppress the line-up identification and evidence obtained as a result of the line-up in violation of United States v. Wade, 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967) as there was no intelligent waiver

of the defendant's right to counsel at the line-up. That the procedure used in the line-up was so unfair as to violate the due process clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. Motion to suppress line-up, identification, and all evidence obtained as a result of the line-up."

"2. The Court erred in failing to sustain the defendant's motion to dismiss made in open court based on the fact that the defendant had been previously acquitted of a burglary charge and receiving and concealing charge arising out of the same set of facts, which violated the defendant's Fifth Amendment rights against double jeopardy as outlined in Waller v. Florida, [397 U.S. 387] 90 S.Ct. 1184 [25 L.Ed.2d 435] (1970) and the principle of collateral estoppel as outlined in Ashe v. Swenson [397 U.S. 436] 90 S.Ct. 1189 [25 L.Ed.2d 469] (1970)."

■ The first assignment of error that the Trial Court erred in failing to suppress the line-up identification is without merit. The trial judge conducted a full and complete hearing, in the absence of the jury on this question and found that the defendant had voluntarily and understandingly waived his right to have counsel present at the line-up. The court further found that the line-up was fairly and properly conducted. We find that the evidence does not preponderate against the finding of the trial judge. State ex rel. Lawrence v. Henderson, Tenn.Cr.App., 433 S.W.2d 96; Lloyd v. State, 223 Tenn. 1, 440 S.W.2d 797.

Likewise without merit is the defendant's second assignment of error that his trial and acquittal of burglary of the store in which the blank checks and check writing machine were stolen constitutes a collateral estoppel, is double jeopardy and is a bar to this prosecution for passing forged checks.

■ This question is not properly before the court. We have been unable to find in the record a copy of the burglary indictment or a copy of the minute entry showing trial and acquittal of burglary. The defendant in his argument before the court on this point made an oral motion before the court. There is not sufficient proof to support his motion. It is true the witnesses testified about the burglary case but not in sufficient detail for us to know that there was a trial and an acquittal of burglary.

Defense counsel and the District Attorney discussed the burglary case with the trial judge but that is not proof of the burglary case.

■ However, for the purpose of argument suppose the defendant was tried and acquitted of the burglary in which the blank checks were stolen which were later forged, the passing of the forged checks would not bring the cases within the purview of Ashe v. Swenson relied on by the defendant. There were 6 poker players all engaged in the same poker game, they were robbed and the defendant was tried and acquitted of robbing one of them. The court held that was a bar to prosecution for robbery of the others. There was one single transaction, one robbery. Here the burglary of breaking and entering with intent to commit larceny was committed. The blank checks and check writing machine were stolen, and then forgery was committed by someone with a check writing machine writing in the amount of $89.40 in one check and $95.40 in the other, then forging the names of the payees and drawers of the checks. Then the passing of the forged checks was committed.

The passing of the forged checks in these cases took place at different times and places and were committed against different people and did not grow out of a single criminal act, or occurrence, episode or transaction. The burglary was already completed before the passing of forged checks.

We find that the passing of the forged checks constituted no part of the burglary.

Mr. Justice Brennan who wrote a concurring opinion in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, said:

"The two prosecutions, the first for the robbery of Knight and the second for the robbery of Roberts, grew out of one criminal episode, and therefore I think it clear on the facts of this case that the Double Jeopardy Clause prohibited Missouri from prosecuting petitioner for each robbery at a different trial. Abbate v. United States, 359 U.S. 187, 196–201, 79 S.Ct. 666, 671–674, 3 L.Ed.2d 729, 735–738 (1959)."

The assignments of error are overruled and the judgment of the trial court is affirmed.

We are grateful to court appointed counsel for his able brief and zealous representation of the defendant.

DWYER and RUSSELL, JJ., concur.