Frank **HOLIDAY**, Plaintiff-in-Error,

v.

**STATE** of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Nov. 22, 1972.

Certiorari Denied by Supreme Court
April 2, 1973.

Earl J. Porter, Jr., Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., William C. Koch, Jr., Asst. Atty. Gen., Aaron Wyckoff, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

OPINION

O'BRIEN, Judge.

Appeal from dismissal of a petition for post-conviction relief without an evidentiary hearing.

Error is assigned to the trial court's action in sustaining the State's demurrer to the petition which alleges systematic exclusion of negroes from the grand jury which returned the indictment against him.

The petition in this cause was filed on April 10th, 1972. Counsel was appointed on April 13th, 1972. On April 27th, 1972, a demurrer to the petition was filed on the premise that the allegations contained in the petition constituted no grounds for legal relief. The cause came on to be heard on May 25th, 1972. The dismissal order relates the matter came on to be heard on the Petition, the Demurrer of the State, statements of counsel, and the entire record. The trial judge sustained the demurrer, basing his decision on the authorities cited in the order.

The petition makes a conclusory allegation that the grand jury which indicted petitioner was selected in violation of the Fourteenth Amendment to the United States Constitution, and in violation of Article I, Section 8 of the Constitution of Tennessee and T.C.A. Sec. 40–1501. It states further that petitioner was tried pursuant to an indictment returned by an illegally selected grand jury from a panel that systematically excluded negroes.

For its factual basis, the petition alleges certain unofficial statistical information indicating that the grand jury system over the years has not been comprised of a "representative" sample or cross-section of the

community. The petition does allege the name of petitioner's counsel at trial and subsequent appeal, but does not make any allegation of incompetency of counsel. It does not state any reason why the grounds alleged in the petition were not timely presented in any of the prior proceedings. It does not include evidence of any kind to support its allegations.

Appointed counsel here has filed a very erudite and compelling brief earnestly urging that the private act creating the system for selection of grand juries in Davidson County is violative of the constitutional rights and statutory provisions as alleged in the petition; that this system for the selection of grand jurors is conducive to the intentional exclusion of blacks from grand jury service; that the petition shows a substantial disparity between black citizens and black grand jurors and therefore establishes a prima facie case of discrimination; and the nonassertion of a timely objection by petitioner's trial counsel to "systematic exclusion" did not constitute effective waiver of such objections and did warrant habeas corpus relief.

The trial court dismissed the petition on the premise that the petitioner had failed to follow the procedural requirements of the law in this State to raise the issue by plea in abatement prior to pleading to the indictment at his trial. Counsel's persuasive argument notwithstanding, the sole question which we may consider here is whether or not the right which petitioner now urges as grounds to void his conviction were waived at his trial, and if at this late date he is entitled to post-conviction relief.

We have reviewed this record thoroughly, including the citations of authority submitted on behalf of petitioner and the State, as well as numerous others noted in the course of independent research. we have also reviewed the record of petitioner's original trial in the Criminal Court of Davidson County, and his original appeal to this Court. In doing so, we have concluded that the trial court was eminently correct in dismissing the post-conviction petition.

Petitioner was arrested on March 10th, 1967, and indicated on March 28th, 1967. He came to trial in July, 1967. The jury found him guilty of robbery with a deadly weapon and sentenced him to twenty years in the Penitentiary. He was ably represented at trial, and on appeal, by John Kyle, Esq., of the Davidson County Public Defender's Office. At no time during the course of the trial, nor on the appeal, was the question of the composition of the grand jury raised.

Petitioner's brief relies heavily on State ex rel. Henderson v. Russell, Tenn.Cr.App., 459 S.W.2d 176 (Henderson v. Tollett, 342 F.Supp. 113, M.D.Tenn. 1972), now pending on certiorari before the U. S. Supreme Court. There are a number of federal and state decisions, before and since *Henderson,* supra, which sustain the trial court ruling in this case.

The question of creating a racial balance on a civil petit jury was considered by counsel as early as 1874 in this State, and the Tennessee Supreme Court recognized there that, "The courts have no right to exclude anyone from the jurybox, otherwise qualified, on account of race or color," . . . Mayor and City Council of Nashville v. Charles Sheperd, 62 Tenn. 373.

The issue was raised in Ransom v. State, 116 Tenn. 355, 96 S.W. 953 (1905). It was held in that case that objections to the formation of the grand jury must be seasonably made, and, after indictment, can only be made by plea in abatement, and not by mere motion to quash. The Tennessee Supreme Court in that case, citing from the United States Supreme Court in Agnew v. United States, 165 U.S. 42, 17 S.Ct. 235, 41 L.Ed. 624, applied the theory that the objection came too late for the reason that the defendant had not challenged the competency or legality of the grand jury at the earliest possible moment. The reasoning

in those cases appears to be that where a defendant had knowledge beforehand that a charge against him would be considered by a grand jury which was illegally or improperly composed, objections should be made at the earliest possible moment in order to enable the Court to correct the errors complained of and provide the defendant with the fair trial to which he was entitled. The rule was also stated in both *Agnew,* supra, and *Ransom,* supra, that a defendant must do more than charge discrimination, but must show the manner in which he was prejudiced by the act of discrimination of which he complains.

In Rivers v. State, 117 Tenn. 235, 96 S. W. 956 (1906), the same objection to the racial composition of the grand jury was made and the rule requiring the earliest possible objection to the composition of the grand jury was stated thusly:

". . . And the reason underlying the requirement is that the defendant cannot stand by and speculate upon the probability of the grand jury finding, or not finding, an indictment against him; and if they should find such indictment, he may thereupon attack the Constitution of the grand jury."

In Pennel v. State, 122 Tenn. 622, 125 S.W. 445 (1909), objection to the composition of the grand jury was made because of the manner in which the grand jurors were appointed by the judge of the Criminal Court of Davidson County. The method was similar to that employed under the Private Acts of 1947 by which grand jurors are now chosen in Davidson County. In the *Pennel* case, the Supreme Court held that the plea in abatement came too late, and also that the defendant had failed to aver want of knowledge of the competency of the grand jury before his arraignment and plea of not guilty, and that it was incumbent upon him to aver that his plea was filed at the earliest opportunity after knowledge of the existence of the indictment.

In Chairs v. State, 124 Tenn. 630, 139 S.W. 711 (1911), the judgment of the trial court was affirmed on this issue for the explicit reason that the matter should be raised by plea in abatement, properly verified. The court held the rule to be, "That if the want of an opportunity to challenge the panel is an element in the right to maintain the plea, the existence of such want of opportunity must be negatived." "It must appear from its averments to have been filed at the earliest possible time."

One of the more recent cases in this jurisdiction on the issue of the racial composition of a grand jury, in which one of the present judges of the United States Supreme Court served as counsel, was published in 1947. (Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132.) This case was properly submitted on a plea in abatement prior to the trial. The issue of discrimination was intensely pursued and the Tennessee Supreme Court found the evidence adequate to show nondiscrimination. The Supreme Court of the United States denied certiorari, 333 U.S. 846, 68 S.Ct. 659, 92 L.Ed. 1129.

In Williamson v. State, 194 Tenn. 341, 250 S.W.2d 556 (1952), the composition of both the grand and petit juries was questioned. The Supreme Court had previously reversed a conviction for the same defendant because no members of the colored race were summoned for jury service. The second conviction was affirmed because the defendant introduced no evidence on the composition of the grand jury at the second trial; as to the petit jury the court found there was no evidence of discrimination by reason of race and the defendant was not entitled to proportionate racial representation.

The question of racial discrimination was raised and considered in Kirkendoll v. State, 198 Tenn. 497, 281 S.W.2d 243 (1955); in McKinnie v. State, 214 Tenn. 195, 379 S.W.2d 214 (1964); and State v. Johnson, 220 Tenn. 49, 413 S.W.2d 694

(1967). In Bonds v. State, 220 Tenn. 555, 421 S.W.2d 87 (1967), the plea in abatement challenging the racial composition of the grand jury was overruled in the trial court and the assignment of error alleging this as a ground for reversal was sustained by the Supreme Court and the indictment dismissed as void.

In 1968 in State ex rel. Hathaway v. Henderson, 1 Tenn.Cr.App. 168, 432 S.W. 2d 503, on appeal from dismissal of a writ of habeas corpus this court found that there was no proof in the record on the racial composition of the grand jury or the petit juries for the term of court in which the defendant had been tried and convicted. This case considers extensively the more recent federal authorities on the question.

In State ex rel. Lawrence v. Henderson, 1 Tenn.Cr.App. 199, 433 S.W.2d 96, cert. denied November 4th, 1968, the rule was reiterated as follows:

"In the petition filed October 9, 1967 petitioner says he was entitled to a copy of the indictment and a copy of the panel of the Grand Jury. He does not say that he ever requested either or that access thereto was ever denied him. Although the petitioner was entitled to a copy of the indictment (T.C.A. Sec. 40–2008) if he had requested it, and a copy of the panel of the Grand Jury to enable him to file a plea in abatement to the indictment for incompetency of the Grand Jurors (T.C.A. Sec. 40–2505; Bennett v. State, 8 Tenn. 133), if he had requested it, he waived these matters by going to trial upon a plea of guilty. If the defendant does not object by motion or plea in abatement, to the venire or to the jurors summoned under it, before he pleads to the indictment, an objection thereafter is too late. State v. Cole, 28 Tenn. 626; McTigue v. State, 63 Tenn. 313; Epperson v. State, 73 Tenn. 291; Dyer v. State, 79 Tenn. 509; Turner v. State, 89 Tenn. 547, 15 S.W. 838; Ellis v. State,

92 Tenn. 85, 20 S.W. 500; Chairs v. State, 124 Tenn. 630, 139 S.W. 711."

It is plain that none of the frailties recognized in Henderson v. Russell, supra, are evidenced under the facts of this case. At his conviction trial, the petitioner failed to follow the procedural requirements of law in this State necessary to raise the issue. In dealing with this precise question in Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 81, the United States Supreme Court had this to say:

"We also have before us the question whether the indictment to which Parker pleaded is invalid because members of his race were allegedly systematically excluded from the grand jury which returned the indictment. The North Carolina Court of Appeals refused to consider the claim since under North Carolina law an objection to the composition of the grand jury must be raised by motion to quash the indictment prior to the entry of the guilty plea. Because Parker had failed to raise his objection in timely fashion, relief was unavailable. This state rule of practice would constitute an adequate state ground precluding our reaching the grand jury issue if this case were here on direct review. See Fay v. Noia, 372 U.S. 391, 428–429, 83 S.Ct. 822, 843–844, 9 L.Ed.2d 837 (1963). We are under similar constraint when asked to review a state court decision holding that the same rule of practice requires denial of collateral relief. Ibid. Whether the question of racial exclusion in the selection of the grand jury is open in a federal habeas corpus action we need not decide."

.      .      .      .      .      .

"The North Carolina Court of Appeals correctly concluded that petitioner's plea of guilty was intelligent and voluntary, and there was an adequate basis in North Carolina procedural law for the North Carolina Court of Appeals' refusal to consider the claim of racial exclusion

in the composition of the grand jury that indicted petitioner."

█ The more recent federal expositions of the rule hold that a State cannot, consistent with due process, subject a defendant to indictment by a grand jury or trial by a petit jury that has been selected in an arbitrary and discriminatory manner contrary to federal constitutional and statutory requirements, and regardless of any showing of actual bias. A petitioner in such a case has standing to attack the systematic exclusion of negroes from grand jury and petit jury service. That has been the law in this State too long to withstand any argument to the contrary, as evidenced by the decisions cited heretofore in this opinion. However, there is a total dearth of evidence in this record to establish the prima facie case of systematic exclusion of such persons as would cast the burden on the State to prove to the contrary.

█ The United States Supreme Court has held that a defendant has a right to initiate federal habeas corpus action on this issue after an adverse decision in the State courts. However, under the facts of this case, those authorities cited here to the effect that a defendant must comply with the procedural requirements of the law in a situation such as this are governing and they do not suggest that any indictment, valid on its face, alleging an offense indictable under the laws of this State, is jurisdictionally defective.

In regard to the question of waiver, this is not a case where defendant was represented at his conviction trial by appointed counsel unfamiliar with criminal procedure or inexperienced in the trial of criminal cases. Defendant was represented by an able and competent member of the public defender's staff, and it would be throwing reason into the teeth of the winds to speculate that counsel was not congnizant of the numerous decisions in this State, extending back for nearly a hundred years, setting forth the procedural steps to be taken to

preserve the right now urged as grounds for reversal. It is equal folly to contemplate that a criminal defendant must be consulted in every situation before a valid waiver can be effected in the course of a trial. To do so would require legal knowledge on the part of the defendant in exercising a choice of action in complicated legal situations which would render useless the ancient and time honored "right to counsel" which our society has always demanded as one of the basic rights of its citizens.

Considering the fact of competent counsel, knowledgeable in the ways of criminal procedure, and cognizant of the rights of those he is appointed to defend, we can make no other assumption than that the election of counsel to by-pass an objection to the composition of the grand jury in this case was a deliberate strategic choice which precludes petitioner on the merits from a successful collateral attack by post-conviction procedure on this issue.

Quite aside from the foregoing, which we consider to be conclusive, the Supreme Court has stated the rule in regard to procedural requirements at trial, as they apply to post-conviction petitions in Arthur v. State, Tenn., 483 S.W.2d 95.

"The question for our decision is whether the petitioner was entitled to an evidentiary hearing or whether the trial court erred in dismissing his petition without such a hearing."

"Section 40–3805, Tennessee Code Annotated, provides that relief under the Post-Conviction Procedure Act 'shall be granted when the conviction or sentence is void or voidable because of the abridgement in any way of any right guaranteed by the Constitution of this state or the Constitution of the United States, including a right that was not recognized as existing at the time of the trial if either Constitution requires retrospective application of that right.'"

.    .    .    .    .    .

"Section 40–3811, Tennessee Code Annotated, excludes from the scope of hearings under the Act 'grounds which the court finds should be excluded because they have been waived or previously determined, as herein defined.' The Act by Section 40–3812 then provided that 'A ground for relief is "previously determined" is (if) a court of competent jurisdiction has ruled on the merits after a full and fair hearing.' "

"By an amendment enacted as Section 4 of Chapter 96 of the Public Acts of 1971, the following paragraph was added to Section 40–3812, effective July 1, 1971:

'A ground for relief is "waived" if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented. There is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived.' "

.    .    .    .    .    .

"There must be a finality to all litigation, criminal as well as civil. The courts, the executive branch of government, the legal profession, and the public have been seriously inconvenienced by the prosecutions of baseless *habeas corpus* and post-conviction proceedings. Defendants to criminal prosecutions, like parties to civil suits, should be bound by the judgments therein entered. When they fail to make timely objection to errors of the courts they must not be allowed at later times of their own choosing—often, perhaps, after witnesses against them have become unavailable—to assert those grounds in post-conviction actions."

"The question presented by this petition is not the same as that dealt with by the Court in State ex rel. Reed v. Heer, Warden, 218 Tenn. 338, 403 S.W.2d 310 (1966). Waiver was not an issue in the *Heer* case. Here the petition contains no allegation that the petitioner in his trial in 1967 excepted to the acts on which he now relies to set his conviction aside."

"We have considered the assignments of error and overrule them. The court properly dismissed the petition without an evidentiary hearing, acting under the authority of Section 40–3809 of the Code. We affirm the Court of Criminal Appeals and the Criminal Court."

Being satisfied that the waiver of the right to object to the racial composition of the grand jury in this case was knowingly and understandingly made we affirm the judgment of the trial court.

OLIVER, J., dissented and filed opinion.

GALBREATH, J., concurred and filed opinion.

OLIVER, Judge (dissenting).

I must respectfully dissent. The petitioner makes factual allegations with reference to systematic exclusion of members of his race from the indicting grand jury. Only by a thorough evidentiary hearing can the validity of those allegations be determined. If those charges are true his conviction was and is unconstitutional and void.

I pointed out in my dissent in State ex rel. Willie Lee Henderson v. Russell, Tenn.Crim.App., 459 S.W.2d 176, that an indictment returned against a Negro by a grand jury from which members of his race were systematically excluded is unconstitutional and void, because such a grand jury is unconstitutionally constituted and void insofar as proceedings against members of the excluded race are concerned; that a valid indictment returned by a legally constituted grand jury is a jurisdictional requirement; that a void indictment confers no jurisdiction of the subject matter upon the trial court; and that lack of such

jurisdiction can never be waived and can be raised at any time, for the simple reason that trial on a void indictment is a nullity.

When Henderson failed to find relief in this Court and the Supreme Court of this State denied certiorari, he pursued his insistence by a habeas corpus petition in the United States District Court in Nashville. In granting the writ and ordering Henderson's release from custody, District Judge Gray, holding that the indictment upon which Henderson was tried and convicted was a complete nullity, said, *inter alia*: "In the latter case, stated in the simplest of terms, there is no 'defect' in the indictment to waive, for there is in fact no 'indictment' to contain such a defect: instead, there is merely a sheet of paper, meeting, to be sure, the facial requisites of a valid indictment, but having in actuality no legal effect whatsoever. It is clear that any criminal prosecution brought incident to such an 'indictment' is illegal and that a plea of guilty to such an 'indictment' is of no binding effect, for such an 'indictment' confers no subject-matter jurisdiction on the sentencing court." Henderson v. Tollett, 342 F.Supp. 113. The Sixth Circuit Court of Appeals affirmed Judge Gray. Henderson v. Tollett, 459 F.2d 237.

In my view, in a matter of such seriousness and magnitude we have no alternative but to reverse and remand this case for an evidentiary hearing on Holiday's petition so that his charges may be fully explored.

GALBREATH, Judge (concurring).

I concur in the result reached by Judge O'BRIEN since I agree with him that we are bound by our Supreme Court's holding in Arthur v. State, Tenn., 483 S.W.2d 95, that habeas type relief cannot be predicated on any ground not raised on the original trial. In doing so I am constrained to point out, as I did in my concurring opinion in State ex rel. Henderson v. Russell, Tenn.Cr.App., 459 S.W.2d 176, that the law which binds us in that case and now in *Arthur* will eventually be changed by higher authority. Although the Sixth Circuit Court of Appeals, as stated in Judge O'Brien's opinion, has undertaken to rule as I prophesied in *Henderson*, that court, while it may order individual relief on a case by case basis, cannot overrule settled principles of law as pronounced by our Supreme Court. See Lawrence v. Woods, 432 F.2d 1072. Such change, if it is to come, must await reconsideration by our highest State Court or the United States Supreme Court.